UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TRENESE HAYWOOD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-415** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION "S" (3)** |

**REPORT AND RECOMMENDATION**

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her claim for disability insurance benefits ("DIB") and for supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). The matter has been fully briefed on cross-motions for summary judgment and is ripe for review. For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

**I.     BACKGROUND**

Plaintiff filed a protective application for DIB on July 30, 2011 and an application for SSI on December 9, 2011, alleging a disability onset date of February 1, 2011. (Adm. Rec. at 156-62, 163-68). Plaintiff alleges disability due to minimal change disease, high blood pressure, depression, multiple sclerosis, chronic asthma, leg pain and numbness, sleep apnea, and a pinched nerve in her back. (*Id.* at 71, 193, 221). Plaintiff, born on September 6, 1979, was 31 years old on the date on which she alleged disability and 33 years old at the time of the final administrative decision. (*Id.*

at 190). Plaintiff completed one year of college. (*Id.* at 194). Plaintiff has past work experience as a store manager, cashier supervisor, cashier, and delicatessen attendant. (*Id.* at 21).

Defendant initially denied plaintiff's application on April 5, 2012. (*Id.* at 87-90). Plaintiff sought an administrative hearing, which defendant held on October 18, 2012. (*Id.* at 28-70). Plaintiff and a vocational expert ("VE"), Thomas Meunier, testified at the hearing.

On January 25, 2013, the administrative law judge ("ALJ") issued a decision in which she found that plaintiff had not been disabled through the date of the decision. (*Id.* at 11-23). In the decision, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, sleep apnea, chronic obstructive pulmonary disease, asthma, hypertension, obesity, anxiety, and major depressive disorder. (*Id.* at 13). The ALJ held that plaintiff does not have an impairment that meets or medically equals a listed impairment under the regulations. (*Id.* at 14). The ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she can never climb ladders, ropes, or scaffolds but can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. (*Id.* at 16-17). She further concluded that plaintiff must avoid even moderate exposure to pulmonary irritants. (*Id.* at 17). The ALJ noted that mentally, she is capable of work that is simple, repetitive, and routine and that involves minimal changes in the work setting. (*Id.*) Lastly, she found that while plaintiff can work in proximity to others, contact and interaction with others should be on an occasional basis. (*Id.*). The ALJ concluded that plaintiff can not perform her past relevant work but that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, namely that of janitor, housekeeper, and cafeteria attendant. (*Id.* at 21-22). The ALJ thus

denied plaintiff DIB and SSI.  (*Id.* at 23).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that she is not disabled. (*Id.* at 153).  On January 7, 2014, the Appeals Council denied plaintiff's request.  (*Id.* at 1-6). Plaintiff then timely filed this civil action.

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence.  *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).   It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.  *See Boyd v. Apfel*, 239 F.3d  698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled

to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.   ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step

evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-

vocational guidelines to make his disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## IV.  ISSUES ON APPEAL

There are four issues on appeal:

(1) Whether substantial evidence supports the ALJ's finding that plaintiff's status post-cerebral accident (stroke) was a non-medically determinable impairment.

(2) Whether the ALJ failed to evaluate whether plaintiff meets Listing 2.03 for *Contraction of the visual fields in the better eye*.

(3) Whether substantial evidence supports the ALJ's evaluation of plaintiff's credibility.

(4) Whether substantial evidence supports the ALJ's RFC assessment.

## V.  ANALYSIS

### 1.  Whether substantial evidence supports the ALJ's finding that plaintiff's status post-cerebral accident (stroke) was a non-medically determinable impairment.

Plaintiff contends that the ALJ erred when she failed to find that plaintiff suffered a stroke. Citing to the record, plaintiff argues that the evidence irrefutably establishes that she suffered a subarachnoid hemorrhage ("SAH"). The Court finds that plaintiff's reliance on whether she suffered a stroke is misplaced.

Once an ALJ proceeds past step two of the sequential evaluation process and ultimately

renders a decision at step four or step five, the severity standard of an alleged disability is generally no longer material. *See Jones v. Bowen*, 829 F.2d 524, 526 n.1 (5th Cir. 1987) (rejecting as "disingenuous" claimant's argument that the ALJ applied the improper severity standard because, as the ALJ proceeded to steps four and five, claimant's case was not prematurely denied based on the ground of non-severity). The applicable regulations that label an impairment as either severe or non-severe are not material when an ALJ ultimately makes a decision at step four or five because the combined impact of all of a claimant's impairments must be considered throughout the disability determination process. *See* 20 C.F.R. §§ 404.1523, 416.923. Thus, once the ALJ determines that a claimant has a severe impairment for the purposes of step two, the ALJ considers the combined effect of all impairments, regardless of whether they are the result of impairments that the ALJ considers "severe" or "non-severe." Here, the ALJ complied with 20 C.F.R. §§ 404.1523 and 416.923. She stated that, to make her RFC finding, she must consider all of plaintiff's impairments, including those that are not severe. (Adm. Rec. at 13). The ALJ then considered all symptoms and opinion evidence in reaching her RFC assessment. (*Id.* at 17). A review of the ALJ's decision reveals that the ALJ discussed and considered all of plaintiff's impairments, the effects of those impairments, and her symptoms. Thus, the ALJ complied with the regulations in making her RFC and step five findings.

Specifically, the ALJ considered the medical evidence of the stroke when she discussed the medical records that indicated that plaintiff had suffered an acute SAH. (*Id.* at 19-20). The ALJ considered the fact that, in August 2012, plaintiff's CT scan revealed an acute SAH, but she also noted that later that same month, medical evidence showed that the condition was improving. (*Id.*

at 19, 626). In addition, on August 20, 2012, a cerebral angiogram revealed normal cerebral circulation and flow. (*Id.* at 19, 602). On September 5, 2012, a cerebral angiogram indicated that there was no longer evidence of a SAH. (*Id.* at 19, 568). The ALJ thus considered the evidence that plaintiff had suffered from a type of stroke, but she concluded that the medical records indicated that, as of August 2012, her condition had improved. (*Id.* at 19).

Plaintiff does not demonstrate how her acute SAH caused greater limitations than those set forth in the ALJ's RFC assessment. In addition, plaintiff does not demonstrate that the ALJ's finding prejudiced her claim. She argues only that substantial evidence does not support the ALJ's finding that she did not have the medically determinable impairment of stroke. However, this alone is not grounds for reversal in that this impairment is not inherently disabling under the SSA. *See Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir. 1989). Suffering from an impairment does not establish disability; a claimant is disabled only if she is "incapable of engaging in *any* substantial gainful activity." *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986). Assuming for the sake of argument that plaintiff suffered a stroke, she must demonstrate that she is functionally impaired by this stroke and thus precluded from engaging in substantial gainful activity. The ALJ here considered the evidence of the stroke; however, plaintiff points the Court to no evidence of how the stroke would affect her ability to perform basic, work-related activities or impact the ALJ's RFC assessment. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (holding that claimant must show that she is so functionally impaired that she is precluded from engaging in substantial gainful activity). This argument fails.

## 2. Whether the ALJ failed to evaluate whether plaintiff meets Listing 2.03 for *Contraction of the visual fields in the better eye*.

Plaintiff argues that she meets the requirements for a visual impairment as set out in 20 C.F.R. Pt. 404. Subpt. P, App. 1 § 2.03B.  Listing 2.03B is met by showing contraction of the visual field in the better eye, with a mean deviation ("MD") of -22 decibels or worse, determined by automated static threshold perimetry as described in section 2.00A6(v). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.03B. The criterion in 2.03B is based on the use of a test performed on a Humphrey Field Analyzer that measures the central 30 degrees of the visual field. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 2.00A6a(v). In addition to the test requirements to evaluate the visual field loss, the test itself must be reliable. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 2.00A6a(ii)(E). The perimeter must demonstrate good test-retest reliability. *Id.*  Plaintiff underwent the Humphrey Field Analyzer test on October 24, 2012.  (Adm. Rec. at 777-78). The Court finds, however, that the test was not reliable.

Plaintiff's test results show a MD of "-24.46" in her right eye and "-23.36" in her left eye. (*Id.*).  However, in order to meet the listing and as noted above, the test must be considered reliable, and in this case, the Court finds that it was not.  The October 24, 2012 test found "false negative errors" for the left and right eyes and "fixation errors" for the right eye.  (*Id.*).  Specifically, there were 83% false negative errors on 10% fixation errors on the right eye, and 50% false negative errors on the left eye.  (*Id.*).  The "Interpretation Report" from the Bond Eye Clinic noted that plaintiff's eyes watered, and she had difficulty seeing the flickers. (*Id.* at 776).  The physician's interpretation was that the test had "poor reliability." (*Id.*).

Each perimeter manufacturer identifies factors that are used to determine whether the test results are reliable. *See* Social Security Ruling ("SSR") 07-01p, 2007 WL 2215467, at *3. For the Humphrey Field Analyzer, the reliability factors are fixation losses, false positive errors, and false negative errors. *Id.* The test results are not reliable for evaluating visual field loss if the fixation losses exceed 20 per cent, or if the false positive errors or false negative errors exceed 33 per cent. *Id.* Here, it is undisputed that the test results show false negative errors in excess of 33 per cent in both the left and right eyes; therefore the tests are not reliable under SSR 07-01p. (Adm. Rec. at 777-78). Even plaintiff concedes that the vision test had poor reliability. [Rec. Doc. 12-2 at 19].

Because the vision test was unreliable, plaintiff can not demonstrate that she meets all of the criteria of Listing 2.03. To demonstrate that an impairment matches a listing, it must meet all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530. Here, plaintiff concedes that her test results demonstrated poor reliability, and she took no further action to produce reliable results. (Adm. Rec. at 283). At step three of the sequential evaluation process, the burden remains on plaintiff to establish that she meets or equals a listing. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Plaintiff does not meet her burden of proof. Accordingly, the ALJ properly found that plaintiff did not meet a listed impairment.

**3.     Whether substantial evidence supports the ALJ's evaluation of plaintiff's credibility.**

Plaintiff contends that the ALJ erred in evaluating her credibility by not finding that she suffered a stroke. She maintains that this prejudiced her to the extent that the ALJ failed to include in the RFC assessment any limitation resulting from said stroke, including her vision problems.

After reviewing the record, the Court finds that substantial evidence supports the ALJ's finding here.

"It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted). To this end, the ALJ is required to make "affirmative findings regarding a claimant's subjective complaints [of pain]," *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994), and such findings "should be upheld if supported by substantial evidence." *Chambliss*, 269 F.3d at 522 (citation omitted). The ALJ is not required to explicitly discuss all the evidence that supported the decision or the evidence that she rejected. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). "That the [ALJ] did not follow formalistic rules in [her] articulation compromises no aspect of fairness or accuracy that this process is designed to ensure." *Id.*

Plaintiff maintains that the ALJ's finding that she did not suffer a stroke led to an adverse finding of credibility. However, the ALJ considered many legitimate factors that weighed against plaintiff's credibility. When she addressed credibility, the ALJ found plaintiff's allegations to be inconsistent with the objective findings of medical evidence in the record. (Adm. Rec. at 19-20). "One strong indication of the credibility of an individual's statements is their consistency both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5. Plaintiff's alleged stroke, in addition to her allegation of multiple sclerosis, were simply some of the factors that the ALJ cited as unsupported by the record evidence. (Adm. Rec. at 17-21). The ALJ considered the medical documentation related to these two conditions, noting that on a few occasions, these impairments were not "ruled out," but that there was never a clear diagnosis of either multiple sclerosis or a cerebrovascular accident. (*Id.* at 20).

In addition, the ALJ considered evidence of plaintiff's non-compliance with examinations and treatment. (*Id.* at 20, 331-34, 417). Specifically, the ALJ pointed out that during a March 2012 consultative mental status examination, James Smith, Ph.D., noted that plaintiff put forth variable effort and engaged in a dramatic presentation of affect. (*Id.* at 20, 331-34). Smith noted:

> Ms. Haywood presented herself in an overly dramatic fashion. She trembled and shook to such an extreme that a one [sic] may have though she was having a seizure. Of course, there was no such neurological event occurring and Ms. Haywod was [s]imply acting in a dramatic fashion in an apparent cry for help. At one point she began to squeal as if she were being physically harmed by someone.

(*Id.* at 331). An ALJ may find that incomplete effort, inconsistent performance, and exaggerated responses weigh against a claimant's credibility. *See White v. Astrue*, A. No. 4:08-CV-415, 2009 WL 763064, at *12 (N.D. Tex. Mar. 23, 2009) (citing *Rodriguez v. Barnhart*, No. SA-04-CA-0212, 2005 WL 492857, *4 (W.D. Tex. Feb. 25, 2005) (finding that ALJ committed no error in interpreting claimant's Waddell's signs as malingering given the medical reports of multiple positive signs and poor effort on testing)).

The ALJ also noted that plaintiff admitted to not using her Continuous Positive Airway Pressure ("CPAP ") machine in July 2012. (Adm. Rec. at 20, 417). Moreover, in June 2012, Dr. William P. Kopfler opined that plaintiff was over-medicated and sought to remove several of her medications from her regimen. (*Id.* at 20, 754). Specifically, Kopfler noted that plaintiff was on two calcium channel blockers, two diuretics, and Diovan, which he thought was too much. (*Id.* at 754). He also noted that she was on Soma and Xanax, which "maybe part of her problem as well." (*Id.* at 754). Failure to take pain medication or follow prescribed treatment is a proper credibility factor and indication of non-disability. *See Villa*, 895 F.2d at 1024. The ALJ properly took these statements

into consideration when she assessed plaintiff's credibility.

The ALJ also considered plaintiff's daily activities. (Adm. Rec. at 20). It is well-established that a claimant's activities may properly be considered when deciding a claimant's disability status and assessing her credibility. *See Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995). Plaintiff testified that she is well enough to live alone with her five children, ages ten to eighteen, where she performs household chores, makes her bed, does laundry, cooks meals, plays with her children, and helps them with their homework. (Adm. Rec. at 20, 37, 44, 61, 205). She further testified that she stoops and squats when she plays with her children. (*Id.* at 20, 52). Her function report indicates that she was capable of shopping for clothes and groceries, maintaining her own finances, visiting with family and friends, paying attention, and attending church. (*Id.* at 204-08). The ALJ concluded that such evidence contradicts her claim that she is unable to perform work-related functions. *See Anthony*, 954 F.2d at 296 (holding that ALJ properly discounted claimant's allegations of pain when she had nearly full range of motion without significant pain, visited friends and family, attended church, dressed and bathed herself, prepared her own lunch, and drove once or twice a week).

The ALJ then compared the medical documentation related to plaintiff's impairments to her subjective complaints and found that they did not support her complaints, in that much of the medical documentation suggested that plaintiff's various conditions had actually improved. The ALJ cited several medical records that supported her credibility finding. For example, while plaintiff has a history of degenerative disc disease and lower extremity pain, in January 2012, she demonstrated a normal gait, normal extremities, and full reflexes, despite some loss of lordosis and spasms in her back. (Adm. Rec. at 18, 454). An Electromyography and nerve conduction study of

13

her lower extremities was normal. (*Id.* at 18, 461). At the February 2012 consultative examination, plaintiff demonstrated full range of motion of all joints, normal gait and muscle strength and the ability to squat and walk on her heels and toes. (*Id.* at 18, 327)). In April 2012, she presented with full strength (5 over 5), sensation, and reflexes. (*Id.* at 18, 424). In May 2012, she had a normal gait and normal strength, despite tenderness on spinal palpation and positive straight leg raise testing. (*Id.* at 18, 362, 394-95). In July 2012, she exhibited tenderness with palpation and movement of her back (*Id.* at 18, 408-09), but in August 2012, she again had normal musculoskeletal findings. (*Id.* at 18, 748). The ALJ concluded that such evidence contradicts plaintiff's claim that her lower back pain was unbearable to the point that she could not even get out of bed. (*Id.* at 18, 40-41).

     The ALJ also noted that plaintiff suffered from sleep apnea and asthma; however, in September 2011, a chest X-ray and echocardiogram was normal, although the echocardiogram revealed trivial mitral and tricuspid regurgitation. (*Id.* at 18, 304, 306). At a February 2012 consultative examination, plaintiff demonstrated clear breath sounds and normal heart findings. (*Id.* at 18, 327). In July 2012, plaintiff had shortness of breath and course breath sounds but admitted that she was not using her CPAP machine as directed. (*Id.* at 19, 417). In August 2012, a chest X-ray was negative (*id.* at 627), an angiogram revealed normal cerebral circulation and normal carotid arteries. (*Id.* at 19, 601-602). That same month, she demonstrated normal breath and heart sounds (*Id.* at 19, 599, 748), and the treating physician recorded that her hypertension and asthma were improving. (*Id.* at 19, 597-98). In addition, in September 2012, an angiogram revealed normal findings. (*Id.* at 19, 567-68). Further, while plaintiff complained of headaches, an August 2012 CT scan revealed an acute subarachnoid hemorrhage, but the hemorrhage was improving. (*Id.* at 18, 602,

626). On September 5, 2012, a cerebral angiogram indicated that there was no longer evidence of the subarachnoid hemorrhage. (*Id.* at 19, 568).

Thus, while the medical documentation indicates that plaintiff had some severe impairments – and the ALJ agreed – her statements concerning the intensity, persistence and limiting effects of her symptoms lack support in the record. The Fifth Circuit has found that the factors that the ALJ considered are sufficient to discount a claimant's credibility. *See Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988) (finding that ALJ considered inconsistencies between medical evidence, claimant's daily activities, and claimant's testimony). Because the Court finds that substantial evidence supports the ALJ's credibility determination, it must be entitled to judicial deference. *See Villa*, 895 F.2d at 1024.

   **4.**  **Whether substantial evidence supports the ALJ's RFC assessment.**

Plaintiff maintains that she suffers from Major Depression with Psychotic Features and Panic Disorder with Agoraphobia. As noted above, the ALJ concluded that plaintiff has, *inter alia*, the severe impairment of major depressive disorder. Plaintiff argues that "the vocational expert testified that if Haywood had the RFC found by the ALJ in the decision, with the additional limitation of occasionally displaying behavioral extremes that distracted herself or others, all work would be precluded." [Doc. #12-2 at p. 24]. Plaintiff thus argues that the ALJ erred when she concluded that plaintiff can perform light work with limitations as outlined above.

The ALJ outlined in detail plaintiff's conditions, including the objective medical evidence, which indicated that plaintiff had some limitations, but not to a disabling degree. (*Id.* at 18). The term "residual functional capacity" refers to a combined "medical assessment of an applicant's

impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis*, 837 F.2d at 1386-87. Here, the ALJ reached her RFC assessment after evaluating and resolving the conflicts in the medical evidence, as well as evaluating plaintiff's testimony, which she found to be not entirely credible. (*Id.* at 18). The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. *See Taylor*, 706 F.3d at 603.

As noted, plaintiff alleges that the ALJ erred because the vocational expert stated that all work would be precluded with the limitation of occasionally displaying behavioral extremes that distracted herself and others. Howwever, the ALJ need only incorporate the limitations that the ALJ finds are supported by the record in the hypothetical questions. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The ALJ is not required to incorporate any specific limitations into her RFC assessment simply because it appears in a medical opinion. *See Muse*, 925 F.2d at 790. Rather, the ALJ has the sole responsibility to weigh the evidence, may choose whichever physician's diagnosis is most supported by the record, and may incorporate into the RFC assessment the limitations supported by that diagnosis or diagnoses. *Id.* As outlined below, substantial evidence supports the ALJ's RFC assessment that did not include this limitation. When hypothetical testimony by a vocational expert is unsupported by the evidence, the ALJ may properly disregard that testimony. *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). Thus, the ALJ properly gave no weight to the vocational expert's response to the hypothetical question that included this limitation.

The ALJ thoroughly considered plaintiff's mental status and her limitations with regard to

interacting with others and considered these factors in assessing her RFC. (*Id.* at 19). Plaintiff also alleges that her dramatic presentation at the consultative examination supports her statements about her mental limitations, claiming that the ALJ erred by not making any findings on her behavior extremes. The ALJ considered plaintiff's behavior during the consultative examination, noting that during the March 2012 consultative examination, plaintiff exhibited an inappropriate affect, a variable effort, angry outbursts, and problems with memory. (*Id.* at 19, 49-50, 331-34). But during the same consultative examination, Smith noted that plaintiff demonstrated full orientation, a logical thought process, normal speech, adequate judgment, intact social skills, good language skills, adequate attention, and cognition, and the ability to follow instructions, and the ALJ noted this in her decision. (*Id.* at 331-34). Plaintiff was unable to perform serial seven subtractions from 100 but was able to perform serial three subtractions to 100, and she calculated none of the five arithmetic problems in her head. (*Id.* at 333). Smith found that plaintiff's performance suggested adequate attention and variable motivation. (*Id.*). The assessment revealed no signs of significant functional impairment associated with depression. (*Id.*). Smith concluded that plaintiff had the ability to relate to others, including supervisors and coworkers, and cope with routine changes in the work environment. (*Id.* at 334).

      The ALJ further considered the fact that, in August 2012, plaintiff complained of depression, anxiety, panic attacks, and auditory hallucinations; however, she exhibited normal thought and speech, logical and coherent thought processes, normal intellect, and intact judgment. (*Id.* at 19, 758, 762). The ALJ noted plaintiff's mental limitations and found that plaintiff was limited to occasional social contact to account for her depression and anxiety. (*Id.* at 19). To establish disability, plaintiff

17

must show that she has a functional impairment that precludes substantial gainful activity. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). The Court finds that plaintiff has not met this burden. The ALJ's analysis reveals a thorough consideration of the medical evidence and an appropriate assessment of plaintiff's impairments and RFC. Plaintiff does not present objective medical evidence that demonstrates that she had mental limitations more severe than those outlined in the RFC assessment. The Court thus finds that substantial evidence supports the ALJ's RFC finding.

## VI.  CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 4th day of February, 2015.

_____
**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**